**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GARY LESTER HALL, ET AL., )<br>)<br>Defendants. )<br>) | **CRIMINAL ACTION**<br><br>No. 08-10208-MLB |

**MEMORANDUM AND ORDER**

This case comes before the court on defendants James Coble, Rebel Industries ("Rebel"), and Justice Berry's post-James hearing motions in opposition to the introduction of hearsay statements of alleged coconspirators. (Docs. 269, 270).[1]

On July 15, 2009, all defendants filed and/or joined in a motion to identify and determine admissibility of coconspirator statements. (Doc. 127). On November 5 and 6, 2009, the court held a James hearing to determine the admissibility of coconspirator statements under Federal Rule of Evidence 801(d)(2)(E) prior to trial. Following the hearing, the court asked the parties to supplement their briefs. The court has received the parties' supplemental memoranda and is now prepared to rule. (Docs. 290, 291). For the reasons stated herein, Coble, Rebel, and Berry's motions are granted.

---

[1] Other defendants have filed similar motions which the court will address in a later memorandum and order.

**I.   BACKGROUND**

Ten defendants[2], three of which are corporate entities, have been charged in an indictment filed on October 15, 2008. The indictment contains a total of 43 counts and a forfeiture allegation and alleges a conspiracy to commit Contraband Cigarette Trafficking Act ("CCTA") record keeping violations, mail fraud, wire fraud, violations of the interstate travel or transportation in aid of racketeering enterprises statute, conspiracy to commit money laundering, and money laundering from January 2005 through May 7, 2007.

**II.  ANALYSIS**

<u>Fed. R. Evid. 801(d)(2)(E)</u>

Out-of-court statements made by coconspirators are non-hearsay and admissible evidence under Fed. R. Evid. 801(d)(2)(E).[3] <u>United States v. Owens</u>, 70 F.3d 1118, 1123 (10th Cir. 1995). "Before admitting evidence under this rule, 'The court must determine that (1) by a preponderance of the evidence,[4] a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of

---

[2]On January 13, 2010, the indictment against Danny Davis was dismissed without prejudice. (Doc. 247).

[3]Fed. R. Evid. 801(d)(2)(E) provides: "A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

[4]In the present situation, preponderance of evidence is evidence sufficient to persuade the court that a fact is more likely present than not present. Tenth Circuit Pattern Criminal Federal Jury Instruction 1.05.1.

the conspiracy.'" Id. In determining whether Rule 801(d)(2)(E) is met, the court may rely on the coconspirator statements themselves, but the government must produce some "independent evidence" that a conspiracy exists.

Coble, Rebel, and Berry join their codefendants' contentions that the government has failed to establish the existence of a conspiracy by preponderance of the evidence. Coble, Rebel, and Berry additionally contend that even if the court finds that a conspiracy existed, the government has not shown their membership in the conspiracy.

The court can decide the admissibility of the alleged coconspirator statements against Coble, Rebel, and Berry without deciding whether a conspiracy did or did not exist.[5] As discussed below, the court finds that the government has not shown by preponderance of evidence that Coble, Rebel, and Berry were members of either alleged conspiracy.

### Membership

The government must show that each defendant was a member of the conspiracy in order for a coconspirator's statements to be used against all defendants under Fed. R. Evid. 801(d)(2)(E). United States v. Cortez, No. 06-8078, 2007 WL 3225373, at *7-8 (10th Cir. Oct. 26, 2007). "'Mere association with conspirators, even with

---

[5]The court notes that no coconspirator hearsay statements are attributed to Berry and only two statements (Nos. 48 and 51) are made by Coble, both of which concern shipments of cigarettes to Pipestone. The remaining statements which identify Coble (Nos. 63-71) relate primary to statements made to Coble, none of which are overtly criminal in nature or which concern matters not in dispute such as the formation of Rebel by Hall.

knowledge of their involvement in crime, is insufficient to prove participation in their conspiracy.'" United States v. Williamson, 53 F.3d 1500, 1518 (10th Cir. 1995)(quoting United States v. Fox, 902 F.2d 1508, 1514 (10th Cir. 1990)). There must be some evidence that the defendant "knowingly and voluntarily joined the conspiracy and accepted the conspiratorial objectives[.]" United States v. Ailsworth, 948 F. Supp. 1485, 1491 (D. Kan. 1996).

At the James hearing, IRS-CI Special Agent Tonya Martin testified about the conspiracy, the roles Coble, Rebel, and Berry allegedly played, and applicable reporting requirements. The government also presented a detailed power-point presentation during Agent Martin's testimony, which outlined how the conspiracy operated.

### Coble and Rebel

Coble is the president of defendant Rebel, a trucking company located at the same address as defendant Sunflower Supply Company ("Sunflower") in Galena, Kansas. Rebel was hired by Sunflower and Discount Tobacco Warehouse ("DTW") to deliver cigarette orders to various smoke shops in Oklahoma. Prior to becoming president of Rebel, Coble was employed by defendant Gary Hall. The government presented evidence that Hall formed Rebel and recruited Coble as its president while retaining control.

From June to August 2005, Rebel drivers, including Coble, made deliveries to other smoke shops that are alleged to have sold cigarettes bearing improper Oklahoma tax stamps. Coble and other Rebel drivers had invoices with "Gawkskey cover sheets." The government alleges that "Coble had told Gawkskey to produce the bills of lading, and assisted in giving an example to follow. (Doc. 291 at

7). (James Statement 58). ... The invoices/bills of lading would show the cigarettes going from the wholesalers to Pipestone; and the cover sheets would show them going to the individual other smoke shops." The government further alleges that Rebel drivers would deliver cigarettes invoiced to go to Pipestone to other smoke shops, often without stopping at Pipestone. (James Tran. 100-101). Rebel drivers would also deliver checks made payable to "Pipestone" that were written on the Gawkskey bank account to defendant Jeremy Hooker. The government alleges that these payments were for the total amount of the other smoke shops' checks and a "middleman fee" for Hooker.

After August 2005, Rebel drivers made deliveries only to Pipestone. The government has asserted that Coble told Danny Carter, the owner of Gawkskey Smoke Shop, that defendant Tony Grantham "shut down the delivery of cigarettes by Rebel to any shop other than Pipestone because it did not look good." (Doc. 291 at 9). The government also presented evidence that Coble instructed one Rebel driver to deliver part of an order to Pipestone and place the other part on another truck at the Pipestone location.

While the government has presented evidence of Coble's participation in the deliveries of cigarettes to Pipestone and other smoke shops, the court finds that there is insufficient evidence that Coble knew the objectives of the alleged conspiracy and joined and participated with that knowledge. At most, the government has shown that Coble followed instructions from Hall and Grantham regarding where to deliver the cigarettes. Rebel was formed prior to the dates alleged in the indictment. Coble was president at that time and delivered cigarettes for both Sunflower and DTW. Coble's overall

responsibilities did not change after June 2005, but only his destinations and possibly the number of cigarettes he delivered to various smoke shops.

The court finds that the government has not met its burden to show by preponderance of evidence that Coble was a member of the alleged conspiracies. It follows that because Coble was not a member, Rebel, the corporate entity hired to make the deliveries for Sunflower and DTW, was not a member of the alleged conspiracies. Coble and Rebel were merely employed/hired by others who the government alleges conspired to sell contraband cigarettes and defraud Oklahoma and various Indian tribes. See Williamson, 53 F.3d at 1518 (stating that mere association with coconspirators is insufficient to establish membership).

### Berry

There is even less evidence that Berry knew the objectives of the alleged conspiracy and knowingly agreed to become a member. Berry worked under defendant Keith Noe's supervision and was responsible for clerical duties including: filling out deposit slips, tracking forms, and data entry. Berry had no authority to make decisions regarding the sales of cigarettes and did not fill out or file the monthly state reports.

The government presented evidence at the James hearing that Berry tracked the checks payable to "Gawkskey" and made the deposits into the Gawkskey account as evidenced by his fingerprints and handwriting on documents. Berry wrote out the checks payable to "Pipestone" which were signed by Noe. The government also presented evidence of tracking spreadsheets that were used by defendants to

-6-

track payments from the smoke shops. Both the name of the smoke shop and the Pipestone PO number were on the tracking spreadsheets. Berry's handwriting was also on the tracking spreadsheet admitted at the James hearing. (James hearing, Gov't. exh. 45 at 27-28).

The government's evidence of Berry's involvement in the scheme is limited to Berry's job responsibilities as an employee in the accounting department for Sunflower and DTW. Berry had no authority to make decisions and simply followed Noe's instructions. As with Coble, the government presented no evidence that Berry's overall job responsibilities changed after June 2005; only that new customers and accounts were generated for which Berry was responsible for tracking payment. During cross-examination of Special Agent Martin, she admitted that Berry was a low-paid employee who performed basically minimal duties under Noe's direction.

There is no evidence that Berry acted independently and no evidence, or any reasonable inference, that he acted with knowledge of a conspiracy or that Berry's involvement was in furtherance of the conspiracy. Therefore, the court finds that the government has failed to show by preponderance of evidence that Berry was a member of the alleged conspiracies. See, e.g., Jones v. United States, 251 F.2d 288, 294 (10th Cir. 1958) ("[B]ut there is not a scintilla of evidence that [the defendant] knew of the conspiracy charged in the indictment and consented to become a party, or knowingly did any act to accomplish its purpose.").

### III. CONCLUSION

Coble, Rebel, and Berry's motions to determine the admissibility of coconspirator hearsay under Fed. R. Evid. 801(d)(2)(E) (Docs. 127,

269, 271) are granted. Because the government has not met its burden as to Coble, Rebel, and Berry's membership in the alleged conspiracies, coconspirator statements, if any, will not be admissible against Coble, Rebel, or Berry under Fed. R. Evid. 801(d)(2)(E).

IT IS SO ORDERED.

Dated this __12th__ day of April 2010, at Wichita, Kansas.

S/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE